Good morning, everyone. Again, my name is Margaret McBride, and along with Justices David Ellis and Eileen O'Neill Burke, we will be presiding over this matter this morning via Zoom. Because of our Zoom method, we will allow each of the attorneys to have about 10 minutes to present oral arguments. And from that, the appellant may save out some time for rebuttal. I also wanted to advise the attorney that we have a law school class here today. They won't be doing anything other than observing, but they are here. It is retired Justice Warren Wolfson's class from DePaul Law School, the appellate advocacy class. And we have about a dozen students who are here to observe. So I wanted to let the attorneys know about that. And as I say, because of the Zoom, we will allow each of you about 10 minutes and we will permit that uninterrupted. And after you have presented your 10 minutes or so, then the justices will have an opportunity to ask questions. And again, as I think I already indicated, appellant may save some time off for rebuttal. So before we do begin, I would ask both attorneys to identify themselves for the record. Good morning, Your Honor. My name is Kelly Burden, and I represent the appellant, Mr. Ronnie Lance, on this appeal. I'm from the Office of the State Appellant Defender. Good morning, Ms. Burden. Good morning, Your Honors. My name is Assistant State's Attorney Iris Ferozzi here on behalf of the people. Good morning, Ms. Ferozzi. All right. With the introductions, we will now begin. Ms. Burden, you may proceed and you may save some time for rebuttal. Thank you, Your Honor. If I can save three minutes for rebuttal. The issue before this court today is whether the search warrant in this case is valid, because it failed to describe the target of the search warrant with sufficient particularity. First, the warrant in this case did not describe the target of the search warrant with sufficient particularity, and therefore the warrant is invalid under the Fourth Amendment. Further, the valid part of the warrant does not save the invalid part of the search warrant with sufficient particularity in this case. The warrant did not describe the target with sufficient particularity in this case. The warrant allowed for the search of Wu, an unknown male black, 40 to 45 years of age, age 5'5 to 5'9 in height, 175 pounds to 200 pounds, with dark brown complexion, medium build, black hair worn short, and brown eyes. The warrant in this case did not provide a first name. It did not provide a last name. It only provided a nickname. The physical description, which gave a very wide range of age, height, and weight, and other physical characteristics, was so vague and generic that it made the warrant to search the person overbroad, such that it is unconstitutional. The test for whether or not the Fourth Amendment demands have been met is whether the warrant describes the person to be searched in such a manner as to leave the executing officer no doubt or discretion about whom to search. In this case, the officers had doubt and discretion as to who to search when executing this search warrant. Importantly, the validity of the warrant must be assessed on the basis of the information that the officers disclosed or had a duty to discover and disclose to the issuing judge. In this case, Officer Diblicz, who was affidavit, supported the warrant, relied upon the very limited and vague description provided by the confidential informant. Importantly, Officer Diblicz took care to verify that the address on the search warrant was correct, but he did not personally identify or observe the unknown black male with a nickname of Wu who was the target of the warrant. The determination of the validity of the warrant considers facts and circumstances known at the time of the issuance of the warrant, but also considers what the officer had a duty to discover and disclose. Diblicz took no steps to verify Wu per his affidavit. There was no photo array, there was no observation during the surveillance, as his affidavit indicated that he saw Wu approach the address but did not see him anywhere. The particularity requirements prevent general searches, which are forbidden by the Fourth Amendment. The framers included the particularity requirement to prevent the issuance of general warrants, a practice which was prevalent during the colonial era at this time. The search warrant in this case left the officers with doubt and discretion as to who the person was to search. The description in this case is even less particular than the case of People v. Simmons, where the second district held that the... Ms. Bergman, your... Search of a person... Could you move closer to your router, perhaps? You keep freezing up. Am I freezing? Okay. Let me see. I didn't know who was... Right. ...you. Okay. Let me see if that helps. I'm sorry. No worries. Okay. I know nothing about computers. I just know if you move closer to the router, sometimes it works. Okay. Hopefully that will help. Let's see. The description in this case is even less particular than the case of People v. Simmons, where the second district held that the warrant was invalid. Simmons involved the search of a person and the place. The target was invalid as a John Doe warrant because it did not list the name of the person in the description. Similar to the one in this case, it was too broad and unspecific. The search warrant authorized in that case was of an unidentified male, black, approximately 5 feet 8 inches, 180 pounds, with brown hair and brown eyes, medium complexion, and approximately 22 years of age. In many ways, this description in this case is even less particular and less specific because the warrant in this case gives very wide ranges of description. The warrant in Simmons' case did not list ranges of ages and weight and height, but gave exact. The Simmons court also pointed out that the description of having brown eyes and black hair did not add much to the specificity of the warrant because most blacks have dark hair and brown eyes. It must be pointed out in this case to identify who it was. This is important because in determining the validity, the Simmons court looked to cases where the officers had previously identified the target of the warrant at the time the warrant was issued. This adds assurance that the officers are not going to have discretion over whose search in fact, if the officer had seen the target during the surveillance and could have an idea of who they were searching, this would add assurances that the particular requirement was met and that this would not turn into a general search. Because no officer had seen this unknown target and the warrant did not name the target, the generic description listed in the warrant is insufficient. The officers had discretion as to who to search and the search warrant operated as a general warrant, at the very least an overbroad warrant, which authorized the sweeping search of a great many people. Secondly, the invalid portion of the warrant was an overbroad description and more akin to a general warrant, such that it is not a technical defect as the state of service is brief. Lastly, the good faith exception does not apply because the officers' reliance upon the invalid warrant was not reasonable. The good faith exception applies only where the officers' reliance on the invalid warrant is reasonable. In this case, the officers' reliance was not reasonable. Diblich was an officer of 10 years who had participated in the execution of many search warrants and participated in numerous narcotics-related investigations pursuant to his affidavit. Yet he made no effort via the confidential informant to identify who he was. He didn't utilize any of the other police resources at his disposal. Additionally, there's no evidence that the officers, when they entered the apartment, sought to identify who he was. Further, one of the officers testified that he didn't even read the search warrant before entering the apartment. Clearly, the officers did not know who they were to search. As one of the officers also testified, he did not know if the other people in the apartment matched the description. It's for these reasons that the good faith exception just cannot apply in this case. In sum, because the warrant failed to describe with sufficient particularity the target of the search warrant, this warrant is invalid. Accordingly, this court should reverse Mr. Lance's convictions because the evidence in this case should have been suppressed under the fruit-of-the-poisonous-tree factor. Thank you. At this time, then, I will ask first Justice Ellis if you have questions of Ms. Burden. Thank you, Justice McBride. Just a couple questions, Ms. Burden. You talk about the Simmons case. In the Simmons case, the contraband was found on the person, though, wasn't it? I mean, that's a distinction from this case, yes? Yes, Your Honor. Why is that not a very big distinction that would make that decision not applicable? I mean, here, the police officers came into the house, the right address as described in the warrant, and once they got there, then they just acted like police officers do. They saw something close to an individual who immediately took ownership, so to speak, of the contraband, and they arrested him. What is the part of the warrant that deals with the identification of Woo have to do with the validity of what the police officers did? Well, Your Honor, I agree. This case is similar to Simmons in that it was a search of a place and issue, as was in Simmons. At the first holding, that then went on to say even if the warrant wasn't invalid, the search was beyond the scope. Hopefully, am I breaking up? I hope I'm not. Yes, a little bit, Your Honor. Okay. I just got to think. So in this case, the warrant, the argument that appellant is making is a very narrow, precise argument, in that the warrant is unconstitutional on its face. It's an unconstitutional warrant. Fifty percent of the warrant was as to the person to be searched. It wasn't this was two parts of this warrant, but half of the warrant is invalid, and we would argue that that makes the whole warrant tainted and unconstitutional. Is this purely a question of law, then, in your opinion? Yes, it is. Okay. So if the police had executed the search warrant, entered the apartment, and found somebody who did not remotely match the description in the warrant, let's say a female Caucasian, okay, couldn't possibly be Wu, but that individual said, yeah, these are my drugs, they're mine, not anybody else's, you would say that the arrest of that female Caucasian for possession would be invalid because the warrant was invalid? I would, Your Honor. I would argue that the warrant is unconstitutional on its face, because the warrant was unconstitutional in the first part as to the person to be searched. So whether or not the second part as to the address was valid is not relevant. The whole warrant is invalid, and the officer's entry into the apartment was unconstitutional. What would have made this warrant valid? Well, first, for one part, it would have been if there was no request to search for a person. And very often you see that in narcotics cases, and some legal commentators have noted that it's not often that you see a warrant for a search for a person and a place together. So if this warrant, the interesting part about this case is if it were just to the place, it would have been valid. Also, if Officer Diblish, in conducting his surveillance, which also happens very often in drug cases, had some identity of who he was, either through seeing someone entering and exiting the apartment and having the confidential informant verify that that was the person, and then he went and got the search warrant, certainly that would have made it valid. Or he had shown a photo array or asked around for other descriptions of people who could identify who he was. That certainly would have made it constitutional. Are you saying that the police, as part of your argument, we did the conclusion that the police did not have probable cause to search this individual because it was so nonspecific? Or are you simply saying the warrant is legally defective?  Okay. Thank you very much. Justice Burke? Yes. Good morning, Ms. Burton. How are you today? Good. Was there any testimony in the record about the nickname Wu? Were there any efforts on the police to do a search, a name search or anything to link that up? No. There's nothing in the record to indicate that there was any connection to Wu, other than that's who the confidential informant had told Dibletch. But there's no evidence of anything to verify who Wu was, who knew Wu by this nickname, or who he personally was. So in any of the pre-sentence investigation, there was nothing indicating that under that IR, he's also known as the nickname Wu, nothing? Nothing like that, no. And when the officers come in, you're conceding that that portion of the search warrant, naming the first floor apartment at that address, that part was valid, correct? Correct. Is there any case law or what case that supports your position that the fact that they went into very general descriptions, in addition to the physical address, that that negated the validity of the entire work? Well, Your Honor, the argument is essentially that, you know, courts have, Illinois courts have struck down, like people, the Marbury warrants where parts of it are invalid. The case is, the case law is where courts have upheld a warrant, is either because of a technical defect, and those really tend to pertain more to a wrong address, or things like that where the address is off by, and really, when you look back to those cases, really underlying it is whether or not, it goes back to what the officer knew at the time. Did the officer know the exact building they were supposed to search, and this warrant actually say street instead of boulevard? Those type of errors are often excused as a technicality. The doctrine of severability, interestingly, is, the appellate courts have mentioned it. There is not, they have mentioned it in terms of that, it's assumed that it's valid in Illinois as a reason to separate a part of a warrant from another part of a warrant, an invalid part, although there is not exact, there's no case in Illinois that has squarely addressed this issue. And even in the Seventh Circuit, there's no case that exactly addresses whether or not the doctrine of severability would apply, although courts assume that courts in Illinois could apply the doctrine of severability and sever an invalid part. What I would submit to your honors is that, that severability is an option when it's, when prosecutors go in and maybe one thing is not, is not listed. This has happened in other jurisdictions where it's gone in for a drug investigation, and there's something else that sees that they didn't have in the affidavit, and then the court will just say, we're going to sever that part. There was that part that was seen was not particularly described in the warrant, so we're not going to allow that into evidence. What I would submit to your honors in this case is that we have, once again, half of a warrant as to a person to be searched. The unconstitutional nature of this, if this court concludes, which I think it should, that it was an overbroad general description such that the officers had discretion over who to search and did not know who they were supposed to search, that invalidates the whole constitutionality of the whole warrant. Correct me if I'm wrong, the officers in this case did not search his person until the defendant volunteered that all of this stuff in the apartment is mine, correct? That is correct, sure. And there was no indication to anyone in the apartment asking who was who, was there? On the officer's part, no, there was no indication, no. Okay, thank you. All right, so I have a couple of questions. I think the biggest one is, are you indicating, Ms. Burton, that this is a John Doe warrant? Yes, I would liken it to a John Doe warrant, particularly because the nickname in this case did not add anything to the description. So for all practical purposes, the nickname could not have been included in there. So I would. We start with the proposition in West v. Cavell, the United States Supreme Court, that the person has to be named in a warrant. And if the person's not named, it's invalid unless they're sufficiently described. And so who is more of a descriptor, and you could have a name of Joe Smith, also known as who. In that case, the person is named, and who is a descriptive part. So I would argue that it is a John Doe warrant. All right. Well, I don't think either side has really been able to, and I don't know that I was able to find any cases where you have a nickname plus a physical description. But I do know that in Simmons and other cases, the cases say that the fact that a search warrant doesn't have a name or with only a first name may still be valid on its face if the warrant includes other facts, such as a physical description and a location where the person could be found. We have that here. We have a physical description in a location where the CI actually made purchases from who. Do we not? Well, I would agree with you that we have a description, Your Honor. But we have to look, and when looking at a search warrant, the validity of the search warrant, you have to look exactly at the search warrant and the exact wording of it. There's no description. Now, the confidential informant went into the house and saw who. There's no description in who as being, and you will often see this in warrants, as a person who resides at this address. There's no description in the warrant. And absent the language of the warrant incorporating the affidavit, it's not incorporated as the face of the warrant. So there's no language incorporating the affidavit into the warrant. But I would also submit to you that no indication who was actually residing in this apartment in terms of the description in the face warrant. If that were, that would be more indicative and more descriptive. You know, it's not uncommon in warrants for warrants to say the person who works at McDonald's or a person who is often seen hanging out here and there. And then that limits the whole point of it is to limit the amount of people to be searched. But we don't have that on the face of this warrant here. All right. I don't think that, like I said, I don't think either side supplied us with, nor do I believe that there's a relevant Illinois case that says a nickname with a physical description would not be a John Doe warrant. Now, in this case, one of the officers actually testified that he knew who the target of the warrant was because it was a person with the nickname Woo and the physical description. Are you aware that one of the officers testified that he was aware of who, no pun intended, who the target was? When I read that testimony, Your Honor, I took it as that he knew that Woo was named in the target, but not that he could personally identify who Woo was. All right. And there was not an evidentiary hearing on this warrant. No, there wasn't. And I think I probably would agree with you that the standard of review is de novo because there was no evidentiary hearing. So, in addition to the person with this nickname, we don't know, you know, I want to correct something, and that is there was never a search of any person in this apartment, was there? Correct, Your Honor. There was no search. I'm assuming there was a search of incident to arrest. No narcotics, no evidence, nothing that was ever produced in an arrest. There was never a search involving the warrant execution in this apartment. Correct? Correct, Your Honor. Correct. So, the other cases that say, you know, the particular description should not leave an officer with discretion or doubt. So, are you saying that these officers had some discretion because they didn't know who Woo was with this specific physical description? Correct. Correct. I am arguing, Your Honor, that on its face, the description in this warrant and what the officers knew at the time of the execution of the warrant was not sufficient for them to be able to identify the target of this search warrant, and therefore the whole warrant fails because of that. All right. I'm going to go back briefly just to what Justice Ellis asked you when he described if a woman had been searched, but there had been the same facts here. How do you distinguish or challenge the state's citation to People v. Pittman, a 4th District case, where the court held that because probable cause developed that it was permissible to search another person in the apartment who was not named or identified? I don't, in that case, it didn't deal with the facial invalidity of an overbroad warrant as to a person. Is that correct? I just recall that once probable cause developed that the search was proper. But here, we'll go off on another section. The statute under which the search warrant has to comply, Section 108.9, indicates that the police may reasonably detain to search any person in the location in order to prevent a weapon being used against them or to prevent the disposal of things that would otherwise be disposed of. Does that make any difference in this case? It doesn't, Your Honor, because our argument is that the facial invalidity of the warrant at the time it was executed, that the officers, the whole warrant failed, so they have no lawful basis to be on the premises. Okay, and then I want to direct you to the McCarty case, where the Illinois Supreme Court said that generally, where there's a partial invalidity of a search warrant, that doesn't take the whole warrant, and a court would just normally sever that portion. Why wouldn't we do that here when we know that the officers never even searched any of the individuals in this location, and there's really no cases that either you or the state has that says a nickname with a physical description is not in violation of the Constitution or our statute? Yes, well, the McCarty case, I believe, Your Honor, in that case, that was where it was the trailer that was searched, and I think they seized objects. As I was speaking before, they seized objects that were not within the scope of the warrant, and so I think in that case, they indicated that the court could sever, but I don't believe that the holding in that case is that they did sever. And how I would distinguish that, A, is if this court does decide that it wants to sever, that that's an unusual or a step that courts don't take lightly because of the Fourth Amendment indications, because when you sever a part of a warrant, you do harm under the particularity requirement to the Fourth Amendment concerns. So what I would argue in a case like that where it just goes to an object that maybe was outside the scope, severing it, we have a different story, because it's a valid warrant upon entry, and it's an object, a part of it that was seized that was not particularly described. In this case, again, it goes back to the fact that 50% of this warrant is unconstitutional, and you could flip it around and say, well, they chose to go to the place before the person, but what if the officers went to the person first and stopped a male black that they had never seen before between the height and age range and decided to search him walking into a school or walking into work? It's the fact that they executed it as to the place first really doesn't change my argument that this warrant is unconstitutionalized, and it should not be severed. All right. Thank you for your comments. And we will now hear from Ms. Ferrosi. Good morning, Your Honors. May it please the court. My name is Assistant State's Attorney Iris Ferrosi here on behalf of the people. Your Honors, as you know, the touchstone of the Fourth Amendment is reasonableness, and when considering the warrant in this case and the process in which it was executed, there was absolutely nothing unreasonable or unconstitutional. There's a before and a during and an after in this case, and the before is that the police officer, who is also the affiant and also the person who executed the search warrant, it's P.O. Diblik, went to a neutral and detached magistrate and got a warrant signed indicating that there was probable cause to go to that location and search somebody by the name of Wu and the descriptions that you've heard from counsel. Armed with this warrant, which he served not even 24 hours later, he went to the location, and before he could even determine who Wu was, defendant was seen committing a crime as soon as he entered that location. The before is the probable cause, which defendant has entirely ignored. The during is executing the warrant and seeing the defendant with illegal narcotics, and the after is that they had an achieved independent probable cause to arrest him based on him seated next to an open container of cannabis and packaging materials. And not only that, and Cook County ID, which had his name on it, which they were then able to link to mail in his bedroom and determine if that was actually his residence, as well as photographs of him at a party on a makeshift mantel inside the apartment. So everything in this case linked up and there was absolutely no reasonableness. And again, I reiterate what Justice McBride asked is nobody was searched. This was a general warrant means that the police have a vague description of a person. They go into a, you know, a dwelling, and then they just start randomly searching people, which is what happened in the Simmons case that defendant so heavily relies upon. Here, the police didn't search anybody. They came in, saw somebody committing a crime, had independent probable cause at that point to detain him and arrest him. And then the defendant immediately took responsibility for the other things that were found in his bedroom, which were guns and heroin. They also located a proof of residency in his bedroom. And I might add, when the defendant was leaving and being taken to the police station, he grabbed his shoes out of the same bedroom. So all of these things indicated reasonableness and a constitutional search of the premises. The defendant had the burden to establish that there was ambiguity or insufficient specificity in this warrant. And at the motion to suppress, did not establish that, did not put on any evidence, did not indicate on the record that they wanted to put on evidence to establish any of the things they were alleging. And it was their burden, and it remains the defendant's burden to establish that it was unspecific. This was not, I feel like the defendant is equating the specificity that's required in a search warrant should be at the same level as an arrest warrant. That the police should know exactly who the person is and all the information before they can arrest somebody. This is a search warrant and Fourth Amendment case law has only required reasonableness and sufficient particularity so that it wouldn't indicate ambiguity or confusion on the part of the police officers. When looking at the record, there was no ambiguity or confusion on part of the police officers. They did not just bust down the door and start randomly searching people. This was not a case like Simmons where the defendant in that case just happened to be standing in what was called the smoke room and doing absolutely nothing else and was searched. And interestingly, in that case, so heavily relied on by the defendant, the Simmons court even stated that had the police had independent probable cause that it would have been a valid arrest. So, for example, if that defendant had been doing something illegal and not just standing there. So even under those facts in that case, so heavily relied on by the defendant, had the police had independent probable cause, then the search would have been valid and the arrest warrant, or excuse me, the search warrant was valid. Here, again, never addressed by the defendant in either his reply brief or here in oral argument, is that the police had independent probable cause as soon as they stepped in the door. According to Officer Diblick, he enters the apartment and there's defendant sitting right in the front room with the narcotics and then he arrested him, read him as Miranda, defendant stated that the narcotics belong to him, and then indicated by a movement of his head that there was more narcotics in the bedroom. This also, I might add, corroborates what the confidential informant told the police officer, Officer Diblick, that Wu kept the narcotics in a bedroom. So it was all corroborated on top of everything else. I also want to address what Justice Ellis brings up is that if there was another individual in that apartment that did not match the description, or even did match the description, and was doing something illegal, for example, had the police entered that apartment and a female Caucasian pulls out her gun, they're not required to just kind of walk past it and be like, oh wait, we can't, you're not in the warrants, so we're just going to ignore that. That's independent probable cause, and they would have every reason to arrest that person, regardless of their race, gender, or anything. And if this court even determines that somehow this warrant was too vague, and that on its face it should be that no police officer could have reasonably relied on it, the good faith exception absolutely applies in this case because the assiant, Officer Diblick, was the one executing the warrant. He was the one speaking with the CI and got the probable cause from the detached and neutral magistrate. And then there was nothing in the warrant to indicate ambiguity. And moreover, when you look at the people who were actually inside the apartment, we had defendant, we had his father, which defendant never put on the record how old he was, but assuming he's older than the defendant, we have the defendant's young son in the apartment, we have a Hispanic man who's getting haircuts in the kitchen, and then another African American man who's right around the same age as defendant. So, again, they did not search anybody, but had they gone in and done that, there was only two people that matched the description of Wu. So, the police, at a minimum, had the good faith exception applies, and they acted reasonably when they entered that unit. One moment, Your Honor. I just want to close with, when we're talking about general warrants or John Doe warrants, that is when a warrant that permits a police officer and his crew to go on a fishing expedition. The fishing expedition is a term that is used all the time when we're talking about these types of situations, the courts have used. The police did not engage in a fishing expedition. They did not enter, begin searching people, begin digging through boxes and cabinets and looking for evidence. They did exactly what they were supposed to do. Everything they did was objectively reasonable, and because of that, this court should affirm the defendant's conviction. All right. Justice Ellis, do you wish to begin with some questions? Yes, thank you very much. Thank you, counsel. Good morning, or I guess good afternoon. You would argue that the standard of review here is not de novo? I would. Because while on its face, and it would seem that it would be because there was no actual evidentiary hearing, when you read the judge's ruling, he makes a factual determination that the defendant matched the description of woo. So I would submit that it actually should be the typical bifurcated standard of review for a motion to suppress evidence. But what does it matter if, you're right, Judge Williams has something to that effect. But why should that matter? Is this an outcome determinative situation where you look later and say, yeah, you know what, it ended up being pretty close to right, so we're good. I think what her argument is, I'm sorry, her counsel's argument, the defendant's argument, is that this was so broad that it could cover tens of thousands of individuals in the city. And I think if Ms. Burden were speaking right now, she would say, well, that's fine that it may have ended up being somewhere close to the truth, but the point is it was overbroad. It was the functional equivalent of a John Doe warrant. That's something we can determine from the face of the warrant, right? Well, if we're taking it a step further with their argument that the police could not have relied on it in good faith, and they had a person that matched the description, I believe that the factual determination of what the defendant looked like definitely factors into this case. But I agree that, I guess, when you're looking at the overall scope of this case, whether it was too vague to be considered a non-John Doe warrant, the defendant's actual description and name play in only in that they match. But as far as whether the, I think I get what you're saying, that it doesn't matter because we're just looking at how vague the description is. So defendant's actual description doesn't matter. Sorry, I just got that. It's my Corona brain. So I would have to concede that in that situation, if we're just looking at the, whether it's specific enough on a face, defendant's actual description doesn't matter. But if we're looking past that to a good faith exception, I think it does matter what his description is. Because if they walked into that apartment and it was all a bunch of, you know, white women, then it would be a different situation, I believe. But counsel, the good faith exception, you're talking about Leon, right? That exception, that is, does not look, that is also not outcome determinative, is it? I mean, you don't ask how did things turn out? Did you get lucky? Was it close enough? You ask, you know, did he have, was it reasonable to rely on this warrant? Right. Granted, a neutral magistrate said it was good enough for that neutral magistrate, but that's, you know, if that were enough, then we would have no Leon exception. It would always be a good faith exception. I mean, doesn't that still come down to how vague it is, even under the good faith exception? If an experienced officer, like Officer Didlett, I think is his name, should have known that this was, you know, I'm not saying that I agree with this, but if he had known that this was essentially a John Doe warrant, was it reasonable for him to rely on it? Isn't that our question and not whether, how it turned out? Yes. So there is nothing more, more specific that this warrant could have had except perhaps actual first name instead of Wu, an actual name defendant. There's never been a requirement that a police officer has to actually lay eyes on the target of a search warrant before they enter. There's never been that responsibility on them, likely because the possibility of them blowing their cover or not being able to execute the search warrant is, it's a factor. That's right. Yes. So I believe what defendant is arguing is that they were supposed to independently verify Wu's identity before they could enter that apartment. Otherwise, it's too vague. That has never been the standard. The standard is no fishing expedition. So not so vague that, for example, if it just said male, black, 18 to 30, average height, average weight, that is extremely vague. This, this description included a nickname, an age range, a height, a weight, a complexion, a build, and how his hair was worn, short. Then you also have black hair and brown eyes, which as Simmons says, could apply to any African American male. But we have all these other descriptives about Wu and based on a verified confidential informant who gave this description. The only other thing is what I believe defendant would want and feel like should be required is a name. And then we're going into arrest warrant territory where the police need to know all those things. This is a search warrant of a premises. And I submit that even if Wu wasn't there, that doesn't mean they have to turn around and exit when they go in and they view illegal activity. Yeah, that has to be your argument. Yes. If this warrant did not have the address of 1415 North Larrabee, if it was just a warrant to search a person, would this have been a valid warrant as written? With no address? Yeah. So it would just be a search warrant. And I believe you can't, if you're trying to separate the two, so it would be a search warrant to search somebody, not in a premises, so just out on the street. Right. I would say that... I'm not sure I've ever seen one of those. No, I haven't either. That's why I'm asking. That's my hesitation to answer. Someone who's a drug dealer and he's only known by the neighborhood he works in. Right. Well, I believe, I mean, we're talking about a reasonable suspicion standard. That's the first thing that comes to mind is a Terry v. Ohio reasonable suspicion standard. If you see someone on the street and a confidential informant says, that guy sold me heroin 10 minutes ago, do they have probable cause to arrest him? Probably not. Do they have reasonable suspicion to stop him and question him? I would say that that would be a yes, a reasonable suspicion for sure. Okay. Okay. Thank you very much. That's all I have. Thank you. Thank you. Justice Burke, some questions at this time? Good morning, Ms. Parosky. How are you today? I'm good. How are you? I'm good. Okay. One of your arguments, correct me if I'm wrong, when the police defendant had cannabis, that's from along with his cook family deed, right? Yes. Okay. And at the time, I'm assuming cannabis was still illegal. Correct. Would you be able to make the argument today that there was an independent basis for probable cause when cannabis is no longer illegal? Well, I could, and this is why. Not only was there cannabis present, but there was a Cook County ID and defendant's statement that all of this is mine. I guess if you took out the cannabis, it's like a slippery slope because the cannabis, this is like a law school question. So you have the cannabis, which led to the immediate arrest. Okay. So if you take out the cannabis because the cannabis is legal, I don't think they would be able to arrest him right away. Then that would not have been a proper arrest. But then if cannabis was legal, I don't think that they would have arrested him. Until it appeared that there was a small case. Right. And I think inevitably, he would have been arrested anyway, because we had the Cook County ID and the proof of residence that was found in his room. So we still have a search warrant. They can search the room, especially because that's where the CI saw Wu take the drugs from. So they would go into the room, find this electricity bill with the defendant's name on it, which they've linked up to the Cook County ID, as well as the photos found on the mantle. So we know it's his residence. So we've linked up residence. And then to the search, they find illegal narcotics in the guns. And then it's still a legal arrest. Why wasn't there any effort to link up the nickname Wu? Wouldn't that have cleaned up all these issues? I don't know why. And I don't think it would have cleaned anything up because, like Justice Ellis said and had to explain to me a few times, that it's really just what's written in the warrant. We'd still be where we are. And like I said, even had they entered and there was no Wu, and it was a bunch of white ladies with their guns drawn, it doesn't matter. They could still arrest all those ladies or anybody else. So whether Wu was actually there, I believe it's not relevant, because once they entered, they had independent probable cause. Okay, one final question. What is your background? I love it. What courtroom is that? Oh, this? Yeah. I have to double check, but I believe it's the Ohio Supreme Court. Very good. All right. Thank you. You're welcome. All right. I have a few questions for Ms. Ferrosi. Yes. You're not agreeing that this is a John Doe warrant, are you? No, I'm not. And at least in the Simmons case and some other cases, I think a John Doe warrant has been aptly described as a search of an unidentified person. In other words, it's actually just a plain old name. John Doe, also known as John Rowe. Is that your understanding of what an actual John Doe warrant is?  John Doe warrant would never generally even have a physical description, would it? Correct. I mean, I'm not saying one way or the other whether I agree with you or Ms. Burden. Ms. Burden says this is a John Doe warrant. Neither one of you and I haven't found any cases that talk about when you have a nickname. But we do have a nickname or we have a name, Rowe, and we have a physical description and the officers are going to a location. And I still want to come back to this idea that in Simmons, the court itself said that simply because a warrant does not have any name or with only a first name, it still may be valid on its face if it includes other facts, such as a physical description. And a location where the person may be found. So I'm not, I'm not deciding one way or the other. But I think we do have to determine in this case, whether or not, or at least it's certainly an issue. Is this a John Doe warrant or is this some variation? Now, since we do have a name and we have a physical description. Do you think there's thousands of people out there that would give the officers the ability to then search anyone at will in this particular case? Or can they only search Wu, a person identified as Wu, who fits this physical description? Yes, correct. They can only search Wu. That's what the warrant says. You're authorized to search Wu and matching this description. Well, I mean, I don't know. Does that limit the discretion? Is there any doubt left for the officers or can they only search a male identified as Wu who also fits the physical description as described in this warrant? Yes, that the warrant is limited to that. However, let me restate that objective reasonableness is the standard. And I mean, if you have a group of police officers coming into your apartment and they say who's Wu, I don't see anyone like raising their hand and saying, oh, it's me. Search me now, please. So that's another issue that we didn't encounter here. It's really just looking at the warrant on its face, whether it is specific enough and not so vague that it would cause confusion when they walk into the apartment as to who Wu is. I mean, it could say, like, let's say the informant said his name is John Smith. And he told me his name is John Smith. It doesn't change anything, whether it's Wu or John Smith or, you know, Donald Trump. It doesn't matter because it's what the police specificity in the warrant that's required. So the police don't just go in and start randomly searching people that are just, you know, happen to be in the apartment. It's different if you're the owner of the apartment and there's a nexus that is between you and the ownership of the apartment where the drugs are located. But if you're just some guy cutting someone's hair, they can't just come and search you. And they didn't. They didn't search anybody. Well, we do look at the facts of the case, don't we, to determine whether or not the officers would act or did act reasonably? Yes. All right. You are also firm in your position that independent probable cause was developed almost immediately upon entry. Yes. What about 1089? The statute that says that the officers, when they execute a search warrant in any case, may reasonably detain any person. Right. And search them, but there has to be one of two situations present. One, for their own safety, if there's an idea a weapon may be used against them. Or two, to prevent the disposal of any possible evidence. Correct. Does that trump everything here? No, because reasonably detaining them is not an infringement on their Fourth Amendment rights in this situation. If you're in a place where there's a search warrant and they're executing a search warrant and it's really like an officer safety thing and, like you said, protection of evidence or the statute says, they can reasonably detain everybody. That doesn't mean they can start searching everybody. No, but the statute says that they can reasonably detain and search. But I don't think you understood my question. Okay. Sorry. Upon their entry, they immediately see this marijuana. He says it's his. His idea is there. Then he talks about the, you know, but we're, I'm going off really on probable cause that may have, you know, developed. You cited the Pittman case, which actually holds that once probable cause is developed upon another person in a place to be searched, that that would trump whatever, you know, whatever else is in the warrant. Yes. And you agree with that? I agree with that. Yes. Once they've seen illegal activity. And again, in Simmons, they didn't see any illegal activity whatsoever. How do you counter Ms. Burden's argument that the partial validity of a warrant doesn't taint the whole warrant, where here Ms. Burden is arguing that you've got half bad of a warrant at least. So, does that even apply when we're talking about a warrant that the defendant claims is actually, you know, half bad? Obviously, I don't agree that it's half bad. I feel it has the sufficient specificity required under the Fourth Amendment. I do think courts have looked at the four corners of the warrant, like a totality of the circumstances type thing, where here we have a detailed description of the location, which defendant does not argue was wrong. And, I mean, I don't, I don't, I'm not 100% prepared to respond to that because it was not included in any of the briefs about severance, but I think what I'm gleaning is it is more of a reasonableness totality of the circumstances thing. And, in this case, it would apply because nobody was searched. So, there was no Fourth Amendment violation in that respect. Nobody in the apartment had their Fourth Amendment violation, you know, constitutionally violated. They were not searched, just detained. Would that argument go to the exclusionary rule then as well? Your argument? As far as the exclusionary rule, first of all, is not something we do lightly, but, yes, and we look at the reasonableness of the behavior of the officers in executing a warrantor. Yes, 100%. Right. I don't have anything further. Do any of the other justices have any questions? No. All right. Thank you, Ms. Berosi, and we'll now return to Ms. Burton for her rebuttal. Thank you, Your Honor. I just have a couple of points that I'd like to. First, I want to clarify that the trial court did not make a The word trial court was that what I'm looking at is not wholly inconsistent with what is in the warrant. That is different than making a finding that Mr. Lance matched the description. But, once again, what I want to kind of direct the court's attention back to is that that's really not the inquiry. The issue that we're raising on appeal is a very narrow issue of whether or not this warrant is valid. If it's invalid, if this warrant is invalid, if this description is not sufficiently particular as I believe it's not, in that it does not describe the target of the person to be searched, that portion of the warrant is invalid. So, in order for this court to uphold this warrant, they either have to call it a technical defect to not describe a person with particularity. I don't think there's ever been a court that has passed off the inability, the insufficient description of a person as a technicality. Or the court has to sever the invalid from the valid part of the warrant. I want to, once again, focus back on the issue for the court is the facial validity. So everything that happens after that, you know, counsel went into after the officers entered and, you know, whether or not they found proof of residence, it's not relevant for the inquiry. The inquiry that we are asking this court to make is to look at the warrant on its face and determine whether or not it's sufficiently particular. I would also take objection with counsel's statement that this is different than an arrest warrant. If you look at West v. Cabell, which was an arrest warrant, in that case, they said that the search, because the arrest of the individual did not have his full name. I'm sorry, it had the full name, but they arrested the wrong person. It said that you have to name the person on the warrant. The particularity clause applies to arrest warrants as well as search warrants. So it's the Fourth Amendment particular clause applies to all warrants. No warrants shall issue. So you have to look at this description and say, is this description of this person in there good enough, good enough to go out and arrest this man? I would submit to you that it's not. Also, I want to take issue with the kind of insinuation that we are saying the police officers have to lay eyes on this person before they go into the apartment. That is not my argument. They had a valid search warrant to enter the place. If the officers wanted to enter the place, they could have just gone on the search warrant as to the place. When they went out to seek authority to search a person, yes, they needed to know who that person was or have a really good indication and a very sufficient description of that person. So the officers, in this case, could have easily gone ahead and just had a warrant to search the place and we would be in a completely different situation. Also, it's not uncommon for officers to go into court and the judge will say, this is not enough. You know, the judge has an obligation, the judge signing off on the warrant. The judge has an obligation to look at the warrant and say, is this specific enough? Do I have enough information? At that point, the judge could have easily said, you have enough for the place. Go ahead as the place. I'm not going to give you the search as to the person. So it's not as though we're looking for a holding to say they can never enter an apartment without having seen the person. There are two separate issues. Now, certainly, had they put in the warrant, the faith of the warrant, that this individual, Wu, is a person who lives at this address and can be found, that would have added to more descriptive of the person and gotten closer in terms of the sufficient particularity part. But we're not applying a reasonableness standard in looking at the particularity clause of the Fourth Amendment. We're looking at whether or not this description on its face was sufficiently particular such that the officers knew who the target of the search warrant was. And because they could not have determined by looking at this warrant who the person was to be searched, the warrant is unconstitutional. And the only way for it to be upheld is either to find the good faith exception applies, that this is a technical error, or to sever that part of the warrant. Thank you. Thank you. Justice Ellis. Just one or two questions, Ms. Burton. Thank you. Doesn't there have to be some causal connection between the Fourth Amendment violation and the evidence gathered? I mean, if the police were to search my house in an invalid way, a warrantless search or the warrant was bad, my Fourth Amendment rights would be violated. But if they didn't find anything, there would be no suppression remedy, right? There would be nothing to suppress. I think we can all agree on that much. I mean, suppression is not in the Constitution. It's a judicial remedy, right? So I think what the state is arguing here is that your client was not searched. So even if this warrant was bad, there's no connection between the problem in the warrant and what happens. They properly entered the house. That part of the warrant allowed them to enter the house. And once they're there, they got to do their jobs as police officers. They see drugs, they're going to act on it. Somebody confesses to them, that's their guy. They didn't search the guy. So your client, maybe incident to arrest they did, but not beforehand. In Simmons, they did, right? In Simmons, they went in, they couldn't figure out who it was, and they just started randomly searching people. You can't do that. But they didn't do that here. The part of the warrant that you admit it was valid is where they gathered the information. The part that you say that was invalid had nothing to do with the evidence they found. So why would we suppress evidence that wasn't You understand what I'm saying? I do. And I'm sorry, you were breaking in and out, and I'm probably because of my internet. I'm sorry about that. But the way I'm taking your question, I want to make sure I answer it correctly, is that because he wasn't searched, and the invalid part of the warrant, there's no evidence he's pursuant to that, then why should it not be suppressed? Right. Yes. So what I would argue to you, Your Honor, is that there has been a substantial violation of an individual's rights when they are charged or faced criminal proceedings based on an invalid search warrant. So I would argue that his rights by being in the house, being there, and being subject to an invalid search warrant, his rights were violated. As to whether or not this court would sever that part of the invalid warrant and say that, oh, we're just going to go off what's found off the facially valid, I would argue that that would end up being a complete runaround for the Fourth Amendment. Then anyone could make a completely overbroad part of a warrant, 50% of a warrant, and then say, let's just go in, and then, you know what, if the courts decide that this isn't related to this part, this part of the warrant is valid. I think the Fourth Amendment is too precious and too important, and I think that we need to be cognizant of the consequences that come from passing off the particularity requirement as sort of a mere technical defect that courts are just going to overlook. Okay. Thank you so much. Justice Burke? No questions. Thank you. One last one, or maybe two. Ms. Burden, if you're incorrect that this is not a John Doe warrant, what is your alternative argument? Well, I think that even if it's not a John Doe warrant, it's overbroad. Okay. So I think that, and I'm glad you asked that question, because I don't think it's necessarily, is this person's full name, is it not their first name, is it a nickname? I think that even if the nickname adds to the description of this warrant, it's still constitutionally overbroad, and it allows for the search of that many people. Okay. I think that the woo part really didn't add anything to the description. I mean, they could have added, this individual has five fingers. Woo didn't add anything to the description, because they didn't know who Woo was, and they made no attempt to find out who Woo was. They could have easily done that. And once again, I'm not saying that big officers, I'm not trying to impose more on officers who are working and have to do more, but when they want to search a person, yes, they need to have a little more than what is before this court and what the judge signed off on. But they didn't search a single person in the room. That's correct, Your Honor. But the officer said, one of them, that he knew who the target was. The target was a person named Woo, who also had a physical description that was selling narcotics out of this location. It's still your position that this is a John Doe warrant, even though it contains a nickname of an individual, and the police officers could not, under this warrant, search anyone unless that person was Woo, and they fit the physical description, which they did not do in this case. Where is the harm? When they had a description, they had a name, a nickname, and they knew that the only people they could search was someone named Woo, who fit into the physical characteristics. You're asking where is the harm in this case? No, where is, yes, where is the facial invalidity? When the police could not search thousands of people, for example, in the Simmons case, there was no name, no identifiers, but there was a physical description of an unidentified male black. How can you compare this case to the case here, where the police did not have the discretion to search thousands of people? Well, I think, once again, it goes back to in which cases that Simmons, for example, goes back to, in those cases that had no idea who we're going to search. So the name of Woo didn't add any assurances to this not being a general search. And the fact that if now had the officers, again, we would be in a different scenario if the officer had laid eyes or through a photo array, someone pointed out and said, this is the man who goes by Woo, then we would be in a different situation. If that was at the time of the warrant being executed. But the Woo does not add anything to the descriptive. And even if we're not going to call it a John Doe warrant, just because it has a personal nickname, there's nothing in the record to indicate that he was known by everyone as Woo. I mean, people have nicknames just for their friends. My dad has a nickname for me. So maybe he's known by Woo as to this confidential informant. And we don't know what Woo added to the description of this warrant. And that's not from the officer's testimony. And I believe the officer, if you're referring to Officer Galligan's testimony, I think his testimony was that he didn't read the search warrant, but he knew that they were searching for someone named Woo and the address of the apartment. There was no indication that he had laid eyes on Woo and knew who they were supposed to search. Also, for purposes of a good faith, looking for good faith, they never went in and said, is your name Woo? And it is for officers entering an apartment where there is a search of a person that will often ask a person to identify themselves. So what I would submit that there is harm in this case and that this is unconstitutional warrant that was 50% of the warrant was unconstitutional. The police officers entered the home based on this warrant. So anything, you know, it's kind of a tenant of Fourth Amendment law. Anything that happens after that is not really relevant, doesn't go, doesn't change the facial validity of the warrant. And we have to look at, this is a very narrow issue, but look back to what the officers knew or had a duty to discover at the time of the execution of the warrant as to the person to be searched. To determine the warrantability. Well, thank you very much. Any further questions by the judges? No. I would like to tell the lawyers that the case was, and I'm sure the panel agrees, very well argued, very well briefed. It's very fascinating case with a very significant issue, issues. So thank you. And that will conclude our arguments on the case. Thank you both. Thank you. Under advisement.